## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | CASE NO.: 1:10-cv-00295 |
| v. | |
| BEMIS COMPANY, INC., | JUDGE: Kollar-Kotelly, Colleen |
| and | |
| RIO TINTO PLC, | DECK TYPE: Antitrust |
| and | |
| ALCAN CORPORATION, | |
| Defendants. | |

### FINAL JUDGMENT

WHEREAS, Plaintiff United States of America ("United States") filed its Complaint on February 24, 2010, the United States and defendants Bemis Company, Inc., Rio Tinto plc, and Alcan Corporation, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by defendants to assure that competition is not substantially lessened;

(N)

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. **JURISDICTION**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. **DEFINITIONS**

As used in this Final Judgment:

A.     "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B.     "Bemis" means defendant Bemis Company, Inc., a Missouri corporation headquartered in Neenah, Wisconsin, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.     "Rio Tinto" means defendant Rio Tinto plc, organized under the laws of and headquartered in the United Kingdom, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

      D.    "Alcan" means defendant Alcan Corporation, a Delaware corporation that is a wholly owned subsidiary of Rio Tinto headquartered in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

      E.    "Divestiture Assets" means:

          (1)    Alcan's facility located at 905 W. Verdigris Parkway, Catoosa, Oklahoma 74015 ("Catoosa facility");

          (2)    Alcan's facility located at 271 River Street, Menasha, Wisconsin 54952 ("Menasha facility"); provided, however, that the tangible assets used exclusively or primarily for the wax-coating operation located at the Menasha facility shall not be divested pursuant to this Final Judgment;

          (3)    The following tangible assets:

                    (a)    All tangible assets (leased or owned) necessary to operate or used in or for the Catoosa facility and the Menasha facility, including, but not limited to, all real property and improvements, manufacturing equipment, product inventory, tooling and fixed assets, personal property, titles, interests, leases, input inventory, office furniture, materials, supplies, and other tangible property;

                    (b)    All tangible assets (leased or owned) used exclusively or primarily for the research and development of any Alcan Relevant Product in the United States and/or Canada, including, but not limited to,

3

materials, supplies, and other property; and

(c) All records and documents relating to any Alcan Relevant Product in the United States and/or Canada, including, but not limited to, licenses, permits, and authorizations issued by any governmental organization; contracts, teaming agreements, leases, commitments, certifications, and understandings, including, but not limited to, supply agreements; customer lists, contracts, accounts, and credit records; and repair and performance records.

(4) The following intangible assets:

(a) All intangible assets used exclusively or primarily in the design, development, production, marketing, servicing, distribution, and/or sale of any Alcan Relevant Product in the United States and/or Canada, including, but not limited to, all patents, licenses and sub-licenses, intellectual property, copyrights, trade names or trademarks, including, but not limited to, "Halo," "Maraflex," "Clearshield," or any derivation thereof, service marks, service names, technical information, designs, trade dress, and trade secrets; computer software, databases, and related documentation; know-how, including, but not limited to, recipes, formulas, and machine settings; information relating to plans for, improvements to, or line extensions of, Alcan's Relevant Products; drawings, blueprints, designs, design protocols, specifications for materials, and specifications for parts and devices; marketing and sales data;

4

quality assurance and control procedures; design tools and
simulation capability; contractual rights; manuals and technical
information provided by Alcan to its own employees, customers,
suppliers, agents, or licensees; safety procedures for the handling
of materials and substances; research information and data
concerning historic and current research and development efforts,
including, but not limited to, designs and experiments and the
results of successful and unsuccessful designs and experiments;
and

(b)     With respect to any intangible assets that are not included in
paragraph II(E)(4)(a), above, and that prior to the filing of the
Complaint in this matter were used in connection with the design,
development, production, marketing, servicing, distribution, and/or
sale of both any Alcan Relevant Product and any other Alcan
product, a non-exclusive, non-transferable license for such
intangible assets to be used for the design, development,
production, marketing, servicing, distribution, and/or sale of any of
the Relevant Products or the operation or use of the Catoosa
facility and/or the Menasha facility for the period of time that
defendants have rights to such assets; provided, however, that any
such license is transferable to any future purchaser of all or any
relevant portion of the Divestiture Assets.

5

F.      "Relevant Products" means any flexible-packaging rollstock used for chunk, sliced, and/or shredded natural cheeses packaged for retail sale and any flexible-packaging shrink bags used for fresh meat.

G.      "Transaction" means Bemis's proposed acquisition of the Alcan Packaging Food Americas business.

### III. APPLICABILITY

A.      This Final Judgment applies to Bemis, Rio Tinto, and Alcan, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer or Acquirers of the assets divested pursuant to this Final Judgment.

### IV. DIVESTITURES

A.      Bemis is ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. Bemis agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

6

B.     In accomplishing the divestitures ordered by this Final Judgment, Bemis promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Bemis shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Bemis shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrine.  Bemis shall make available such information to the United States at the same time that such information is made available to any other person.

C.     Bemis shall provide the Acquirer or Acquirers and the United States information relating to the personnel employed at the Catoosa facility and the Menasha facility and the personnel otherwise involved in the design, development, production, marketing, servicing, distribution, and/or sale of Alcan's Relevant Products to enable the Acquirer or Acquirers to make offers of employment.  Defendants will not interfere with any negotiations by the Acquirer or Acquirers to employ any person who is employed at the Catoosa facility or the Menasha facility or is otherwise involved in the design, development, production, marketing, servicing, distribution, and/or sale of Alcan's Relevant Products.  Interference with respect to this paragraph includes, but is not limited to, offering to increase an employee's salary or benefits other than as a part of a company-wide increase in salary or benefits.  In addition, for each employee who elects employment by the Acquirer or Acquirers, Bemis shall vest all unvested pension and other equity rights of that employee and provide all benefits to which the employee would have been entitled if terminated without cause.

7

D.     Defendants shall waive all noncompete agreements for any current or former Alcan employee employed at the Catoosa facility, the Menasha facility, or otherwise employed in the design, development, production, marketing, servicing, distribution, and/or sale of any Alcan Relevant Product.

E.     Bemis shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities associated with the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.     Bemis shall warrant to the Acquirer or Acquirers that each asset will be operational on the date of sale.

G.     Defendants shall not take any action that will impede in any way the permitting, operation, use, or divestiture of the Divestiture Assets.

H.     Defendants shall warrant to the Acquirer or Acquirers that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.     Bemis shall take all steps necessary to accomplish the transfer of the leasehold and other rights of possession of the Catoosa facility to the Acquirer, including, but not limited to, invoking and exercising all applicable early termination, early purchase, or other provisions contained in the agreements related to the Catoosa facility, and paying all necessary sums specified in such agreements.

8

J.     Bemis shall warrant that it is divesting Alcan's entire business relating to each of the Relevant Products and will not manufacture any Alcan Relevant Product after the date the Divestiture Assets are divested until the expiration of this Final Judgment.  Defendants shall not solicit business for any Relevant Product that is subject to an unexpired Alcan customer contract transferred to the Acquirer for a period of one (1) year from the date of the divestiture of such contract or the remaining term of the contract, whichever is shorter.

K.     The Acquirer of the Menasha facility shall enter into an agreement with Bemis permitting Bemis to occupy the portions of the Menasha facility utilized for Alcan's wax-coating operations for a period of no longer than three (3) years after the date the Transaction is closed. By no later than three (3) months after the date the Transaction is closed, Bemis shall create physical barriers that segregate the wax-coating operations from the portions of the Menasha facility to be occupied by the Acquirer.  Bemis's areas and operations at the Menasha facility shall be secured separately from those of the Acquirer so that the Acquirer's areas and operations cannot be accessed by Bemis and Bemis's areas and operations cannot be accessed by the Acquirer, other than for facility repair, support, and maintenance pursuant to a lease or other agreement.  At the option of the Acquirer, the lease agreement may include a provision requiring Bemis to remove any or all physical barriers erected to segregate its areas and operations from the Acquirer's areas and operations pursuant to this paragraph.

L.     At the option of the Acquirer of the Divestiture Assets relating to the "Maraflex" products, Bemis shall enter into a supply contract with that Acquirer for the "Maraflex" products sufficient to satisfy that Acquirer's obligations under any customer contract for a period of up to one (1) year.  The amount of "Maraflex" products produced by Bemis for the Acquirer pursuant to such a supply contract shall be limited to the total volume of "Maraflex" products produced

9

by Alcan in 2009 plus one percent, unless otherwise mutually agreed by Bemis and the Acquirer. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for these products. The United States, in its sole discretion, may approve an extension of the term of this supply contract for a period of up to two (2) years. If the Acquirer seeks an extension of the term of this supply contract, it shall so notify the United States in writing at least four (4) months prior to the date the supply contract expires. If the United States approves such an extension, it shall so notify Bemis in writing at least three (3) months prior to the date the supply contract expires.

M.      At the option of the Acquirer of the Divestiture Assets relating to the "Maraflex" products, Bemis shall enter into a transition services agreement with that Acquirer sufficient to meet all or part of that Acquirer's needs for assistance in matters relating to the development, production, and/or service of the "Maraflex" products or technology for a period of at least six (6) months but no longer than three (3) years. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to the market value of the expertise of the personnel providing any needed assistance.

N.      At the option of the Acquirer of the Menasha facility, Bemis shall enter into a supply contract with that Acquirer for any Relevant Product produced at Alcan's facility located at 901 Morrison Drive, Boscobel, Wisconsin 53805 (the "Boscobel facility"), sufficient to satisfy that Acquirer's obligations under any customer contract for a period of up to one (1) year. The amount of Relevant Products produced by Bemis for the Acquirer pursuant to such a supply contract shall be limited to the total volume of Relevant Products produced by Alcan at the Boscobel facility in 2009 plus one percent, unless otherwise mutually agreed by Bemis and the Acquirer. The terms and conditions of any contractual arrangement intended to satisfy this

10

provision must be reasonably related to market conditions for these products. The United States, in its sole discretion, may approve an extension of the term of this supply contract for a period of up to one (1) year. If the Acquirer seeks an extension of the term of this supply contract, it shall so notify the United States in writing at least four (4) months prior to the date the supply contract expires. If the United States approves such an extension, it shall so notify Bemis in writing at least three (3) months prior to the date the supply contract expires.

   O. At the option of Bemis, the Acquirer of the Catoosa facility shall enter into a supply contract for the "Clearshield" products sufficient to satisfy Alcan's or Bemis's obligations to Alcan affiliates Danaflex, Maua, and Envaril for a period of up to one (1) year. The amount of "Clearshield" products produced by the Acquirer for Bemis pursuant to such a supply contract shall be limited to the total volume of "Clearshield" products produced by Alcan for Danaflex, Maua, and Envaril in 2009 plus one percent, unless otherwise mutually agreed by Bemis and the Acquirer. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for these products. The United States, in its sole discretion, may approve an extension of the term of this supply contract for a period of up to two (2) years. If Bemis seeks an extension of the term of this supply contract, it shall so notify the United States in writing at least four (4) months prior to the date the supply contract expires. If the United States approves such an extension, it shall so notify the Acquirer in writing at least three (3) months prior to the date the supply contract expires.

   P. At the option of Bemis, the Acquirer or Acquirers shall enter into an agreement to provide Bemis with a non-exclusive, non-transferable license for the intangible assets described in paragraph II(E)(4)(a), above, that prior to the filing of the Complaint in this matter were used in connection with the design, development, production, marketing, servicing, distribution,

11

and/or sale of both any Alcan Relevant Product and any other Alcan product; provided, however, that any such license is solely for use in connection with the design, development, production, marketing, servicing, distribution, and/or sale of products other than the Alcan Relevant Products. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for such licenses.

Q.     At the option of Bemis, the Acquirer of the Divestiture Assets relating to the "Clearshield" products shall enter into an agreement to provide Bemis with a non-exclusive, non-transferable license to enable Bemis to produce "Clearshield" products for sale outside the United States and Canada. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for such licenses.

R.     At the option of Bemis, the Acquirer of the Menasha facility shall enter into an agreement with Bemis to provide Bemis with rotogravure printing services to be used in connection with Alcan's wax-coating operation located at the Menasha facility for a period of up to twelve (12) months. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for these services.

S.     In any instance where a third party has a right to a divested intangible asset pursuant to an agreement with any defendant, and where the agreement was entered into prior to the date of the filing of the Complaint in this matter, the Acquirer of that divested asset shall enter into an agreement with that third party to provide it with a right to that asset under terms and conditions sufficient to satisfy defendants' obligations under the original agreement.

T.     Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the

12

United States, in its sole discretion, that the Divestiture Assets can and will be used by the

Acquirer or Acquirers as part of a viable, ongoing business engaged in the design, development,

production, marketing, servicing, distribution, and sale of the Relevant Products.  Divestiture of

the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is

demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain

viable and the divestiture of such assets will remedy the competitive harm alleged in the

Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final

Judgment:

> (1)     shall be made to an Acquirer or Acquirers that, in the United States's sole

judgment, has the intent and capability (including the necessary managerial, operational,

technical and financial capability) of competing effectively as a supplier of the Relevant

Products; and

> (2)     shall be accomplished so as to satisfy the United States, in its sole

discretion, that none of the terms of any agreement between the Acquirer or Acquirers and

defendants give defendants the ability unreasonably to raise the Acquirer's or Acquirers' costs,

to lower the Acquirer's or Acquirers' efficiency, or otherwise to interfere in the ability of the

Acquirer or Acquirers to compete effectively.

## V.  APPOINTMENT OF TRUSTEE

A.     If Bemis has not divested the Divestiture Assets within the time period specified

in Section IV(A), Bemis shall notify the United States of that fact in writing.  Upon application

of the United States, the Court shall appoint a trustee selected by the United States and approved

by the Court to effect the divestiture of the Divestiture Assets.

13

B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer or Acquirers acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Bemis any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.     The trustee shall serve at the cost and expense of Bemis, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

14

E.     Defendants shall use their best efforts to assist the trustee in accomplishing the required divestitures. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

F.     After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.     If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after his or her appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestitures; (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished; and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public

15

docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. **NOTICE OF PROPOSED DIVESTITURE**

A.      Within two (2) business days following execution of a definitive divestiture agreement, Bemis shall notify the United States of any proposed divestiture required by Section IV of this Final Judgment. Within two (2) business days following execution of a definitive divestiture agreement, the trustee shall notify the United States and defendants of any proposed divestiture required by Section V of this Final Judgment. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer or Acquirers, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer or Acquirers, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer or Acquirers, any third party, and the trustee, whichever

16

is later, the United States shall provide written notice to defendants and the trustee, if there is
one, stating whether or not it objects to the proposed divestiture. If the United States provides
written notice that it does not object, the divestiture may be consummated, subject only to
defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent
written notice that the United States does not object to the proposed Acquirer or Acquirers or
upon objection by the United States, a divestiture proposed under Section IV or Section V shall
not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed
under Section V shall not be consummated unless approved by the Court.

## VII. **FINANCING**

Defendants shall not finance all or any part of any purchase made pursuant to Section IV
or V of this Final Judgment.

## VIII. **HOLD SEPARATE**

Until the divestitures required by this Final Judgment have been accomplished,
defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order
entered by this Court. Defendants shall take no action that would jeopardize the divestitures
ordered by this Court.

## IX. **AFFIDAVITS**

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and
every thirty (30) calendar days thereafter until the divestitures have been completed under
Section IV or V, Bemis shall deliver to the United States an affidavit as to the fact and manner of
its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include
the name, address, and telephone number of each person who, during the preceding thirty (30)
calendar days, made an offer to acquire, expressed an interest in acquiring, entered into

17

negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the

Divestiture Assets, and shall describe in detail each contact with any such person during that

period. Each such affidavit shall also include a description of the efforts Bemis has taken to

solicit buyers for the Divestiture Assets, and to provide required information to prospective

Acquirers, including the limitations, if any, on such information. Assuming the information set

forth in the affidavit is true and complete, any objection by the United States to information

provided by Bemis, including limitations on information, shall be made within fourteen (14)

calendar days of receipt of such affidavit.

      B.     Within twenty (20) calendar days of the filing of the Complaint in this matter,

Bemis shall deliver to the United States an affidavit that describes in reasonable detail all actions

defendants have taken and all steps defendants have implemented on an ongoing basis to comply

with Section VIII of this Final Judgment. Bemis shall deliver to the United States an affidavit

describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed

pursuant to this Section within fifteen (15) calendar days after the change is implemented.

      C.     Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

      A.     For the purposes of determining or securing compliance with this Final Judgment,

or of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time authorized representatives of the United States

Department of Justice Antitrust Division, including consultants and other persons retained by the

United States, shall, upon written request of an authorized representative of the Assistant

Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be

permitted:

(1)    access during defendants' office hours to inspect and copy, or at the

option of the United States, to require defendants to provide hard copy or electronic copies of, all

books, ledgers, accounts, records, data, and documents in the possession, custody, or control of

defendants, relating to any matters contained in this Final Judgment; and

(2)    to interview, either informally or on the record, defendants' officers,

employees, or agents, who may have their individual counsel present, regarding such matters.

The interviews shall be subject to the reasonable convenience of the interviewee and without

restraint or interference by defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, defendants shall submit written reports or responses

to written interrogatories, under oath if requested, relating to any of the matters contained in this

Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this Section

shall be divulged by the United States to any person other than an authorized representative of

the executive branch of the United States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), for the purpose of securing

compliance with this Final Judgment, or as otherwise required by law.

D.    If, at the time information or documents are furnished by defendants to the United

States, defendants represent and identify in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the

United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. **NOTIFICATION**

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Bemis, without providing advance notification to the Antitrust Division, shall not directly or indirectly acquire any assets of or any interest (including, but not limited to, any financial, security, loan, equity, or management interest) in any company in the business of designing, developing, producing, marketing, servicing, distributing, and/or selling any of the Relevant Products in the United States and/or Canada during the term of this Final Judgment.

Such notification shall be provided to the Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about the Relevant Products. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the Antitrust Division make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate,

20

granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII. NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV. PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments. The Court has considered the three letters from citizens of Menasha, Wisconsin and employees from the former Alcan plant in Menasha, and the government's response to those concerns.

21

Undoubtedly, the changes to the Menasha plant required by this consent decree will be disruptive to some extent to its operations as it goes through the transition period.  The comments address how the removal of the wax coating operations affects employees of the two operations. As the government acknowledges, there will be changes as to how the plant is operated.  The Court agrees, however, that for the parties to this action and any future acquirer, it will not be in their interests to implement policies which will affect negatively the operations of the plant. Moreover, since Bemis, according to the government, specifically requested to retain the wax coating operation and is moving it at great expense, it is unlikely that the goal would be to destroy that operation.  As to employee scheduling and leave policies, that is beyond the scope of the competitive harms at issue in this case.  Accordingly, on balance, the comments received do not change the Court's assessment that the terms of this consent decree meet the public interest involved.

Based upon the record before the Court, which includes the Competitive Impact Statement and the comments and responses to comments filed with the Court as discussed, entry of this Final Judgment is in the public interest.

Date: _July 13, 2010_

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

COLLEEN KOLLAR-KOTELLY
United States District Judge